**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **MYRA REAMES-CLEVENGER** and **SHIRLEY ROHR**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**MULLINAX FORD OF CENTRAL FLORIDA, INC.**,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Myra Reames-Clevenger and Shirley Rohr ("Plaintiffs"), on behalf of themselves and all others similarly situated, states as follows for their class action complaint against Defendant, Mullinax Ford of Central Florida, Inc. ("Mullinax" or "Defendant").

## NATURE OF ACTION

1. This Class Action arises from Defendant's failure to protect sensitive data (the "Data Breach").

2. On information and belief, the Data Breach occurred on or before January 25, 2026.[1]

3. This incident compromised current and former customers' personally identifying information ("PII" or "Private Information").

4. Defendant has not yet begun formally notifying Class Members about the Data Breach even though Plaintiffs and thousands of Class Members had their most sensitive personal information accessed and abused, causing them to suffer ascertainable

---

[1] https://www.hookphish.com/blog/ransomware-group-dragonforce-hits-mullinax-ford/ (last visited February 4, 2026).

losses in the form of identity theft and fraud, the loss of the benefit of their bargain, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

5. Defendant's failure to timely detect and report the Data Breach made its current and former customers vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Private Information.

6. Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

7. In failing to adequately protect Plaintiffs' and the Class's Private Information, failing to adequately notify them about the breach, and by obfuscating the nature of the breach, Defendant violated state and federal law and harmed an unknown number of its current and former customers.

8. Plaintiffs and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiffs and members of the proposed Class trusted Defendant with their Private Information. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

9. Accordingly, Plaintiffs, on behalf of themselves and a class of similarly situated individuals, bring this lawsuit against Defendant.

## PARTIES

10. Plaintiff, Myra Reames-Clevenger, is a natural person and citizen of Olympia, Washington, where she intends to remain.

11. Plaintiff, Shirley Rohr, is a natural person and citizen of Tumwater, Washington, where she intends to remain.

12. Defendant, Mullinax Ford of Central Florida, Inc., is a Florida Profit Corporation with its principal place of business at 1551 E. Semoran Blvd., Apopka, FL 32703.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Defendant and Plaintiffs are citizens of different states. And there are over 100 putative Class Members.

14. This Court has personal jurisdiction over Defendant because Defendant has its principal place of business and/or corporate headquarters in Florida. Furthermore, Defendant regularly conducts business in Florida and have sufficient minimum contacts in Florida.

15. Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## STATEMENT OF FACTS

***Mullinax Ford***

16. Mullinax is a car dealership headquartered in Florida, with locations throughout Florida, Alabama, and Washington.[2]

17. As part of its business of providing services, Defendant receives and maintains the Private Information of thousands of its current and former customers.

18. In collecting and maintaining Private Information from its customers, Defendant agreed it would safeguard the data in accordance with state law, and federal law. After all, Plaintiffs and Class Members themselves took reasonable steps to secure their Private Information.

---

[2] https://mullinaxford.com/find-your-mullinax-ford (last visited February 4, 2026).

19. Defendant promises to safeguard the Private Information it collects, promising in its "Privacy Policy" that:

a. "We implement reasonable security measures to ensure the security of your personal information;"

b. "You may have a legal right to receive notice of a security breach in writing depending on where you live;"

c. "While we use encryption to protect online information, we also make all reasonable efforts to secure and protect your information offline;"

d. "All of our customers' information is restricted in our offices and only employees who need the information to perform a specific job function are granted access to this information;" and

e. "The services that store your personal information are housed in a secure environment."[3]

20. Despite recognizing its duty to do so, on information and belief, Defendant has not implemented reasonable cybersecurity safeguards or policies to protect the Private Information in its care or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, Defendant left significant vulnerabilities in its systems for the breach and publication of its customers' Private Information.

***The Data Breach***

21. Plaintiffs are customers of Defendant and data breach victims. As a condition of receiving services from Defendant, Plaintiffs provided it with their Private Information.

22. On information and belief, Defendant collects and maintains its current and former customers' Private Information in its computer systems.

---

[3] https://mullinaxford.com/privacy-policy (last visited February 4, 2026).

23. According to multiple online reports, the Data Breach was perpetrated by notorious cybercriminal group, DragonForce on or about January 25, 2026.[4]

24. DragonForce is a Ransomware-as-a-Service group that was first observed in 2023, and "operates a multi-extortion model, with victims threatened with data leakage via the group's data leak sites, alongside reputational damage."[5]

25. On February 1, 2026, DragonForce claimed credit for this breach on its leak page, stating that it had exfiltrated at least 294.65 GB of data from Defendant.[6] Worse, DragonForce provided a link to "Publicated files."

---

[4] https://www.hookphish.com/blog/ransomware-group-dragonforce-hits-mullinax-ford/ (last visited February 4, 2026); https://www.breachsense.com/breaches/mullinax-ford-data-breach/ (last visited February 4, 2026).

[5] https://www.sentinelone.com/blog/dragonforce-ransomware-gang-from-hacktivists-to-high-street-extortionists/ (last visited February 4, 2026).

[6] https://www.ransomware.live/id/TXVsbGluYXggRm9yZEBkcmFnb25mb3JjZQ== (last visited February 4, 2026).




26. Thus, on information and belief, Plaintiffs' and the Class's stolen Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

27. In other words, Defendant's cyber and data security systems were so completely inadequate that they permitted Plaintiffs' and the Class's highly sensitive Private Information to accessed and viewed by cybercriminals for an unknown amount of time.

28. Through its inadequate security practices, Defendant exposed Plaintiffs' and the Class's Private Information for use by fraudsters and sale on the dark web.

29. Defendant has yet to issue formal notices to individuals impacted by the Data Breach.

30. Despite its duties and alleged commitments to safeguard Private Information, Defendant did not in fact follow industry standard practices in securing Private Information, as evidenced by the Data Breach.

31. Cybercriminals and other fraudsters need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiffs' and the Class's Private Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiffs' and the Class's financial accounts.

***The Data Breach was a Foreseeable Risk of which Defendant was on Notice.***

32. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches preceding the date of the breach.

33. In light of recent high profile data breaches, Defendant knew or should have known that its electronic records storing Private Information would be targeted by cybercriminals.

34. In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[7] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[8]

---

[7] *2021 Data Breach Annual Report*, ITRC, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf (last visited February 4, 2026).

[8] *Id*.

35. Indeed, cyberattacks have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime." [9]

36. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***Plaintiff Myra Reames-Clevenger's Experience***

37. Plaintiff Reames-Clevenger is a customer of Defendant, having purchased a vehicle from Defendant in October 2025.

38. As a condition of receiving services with Defendant, Plaintiff Reames-Clevenger provided Defendant with her Private Information, including but not limited to her name, driver's license, Social Security number, and insurance information.

39. Plaintiff Reames-Clevenger provided her Private Information to Defendant and trusted that it would use reasonable measures to protect it according to state and federal law.

40. Defendant deprived Plaintiff Reames-Clevenger of the earliest opportunity to guard herself against the Data Breach's effects by failing to notify her of the Breach.

41. As a result of their inadequate cybersecurity, Defendant exposed Plaintiff Reames-Clevenger's Private Information for theft by cybercriminals and fraudsters and sale on the dark web.

42. Plaintiff Reames-Clevenger spent time dealing with the consequences of the Data Breach, which includes time spent gathering information about the Data Breach, self-

---

[9] *Gordon M. Snow Statement*, FBI, https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited February 4, 2026).

monitoring her accounts and credit reports to ensure no fraudulent activity has occurred, and dealing with spam. This time has been lost forever and cannot be recaptured.

43. Following the Data Breach, Plaintiff Reames-Clevenger has experienced a large influx of spam and scam calls and emails related to car warranties and vehicle information. This further demonstrates that Plaintiff's information was stolen in the Data Breach has been placed in the hands of cybercriminals.

44. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[10] On information and belief, the spam calls and emails Plaintiff Reames-Clevenger is experiencing are a result of the Data Breach.

45. Plaintiff Reames-Clevenger has and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff fears for her personal financial security and uncertainty over what Private Information was exposed in the Data Breach.

46. Plaintiff Reames-Clevenger has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

47. Plaintiff Reames-Clevenger has suffered additional actual injury in the form of damages to and diminution in the value of their Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

48. Plaintiff Reames-Clevenger suffered actual injury from the exposure of her Private Information —which violates her rights to privacy.

---

[10] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited February 4, 2025).

49. Plaintiff Reames-Clevenger has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties and possibly criminals.

50. Plaintiff Reames-Clevenger has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiff Shirley Rohr' Experience***

51. Plaintiff Rohr is a current customer of Defendant, having purchased vehicles from Defendant in 2022 and 2024.

52. As a condition of receiving services with Defendant, Plaintiff Rohr provided Defendant with her Private Information, including but not limited to her name, title information, address, contact information driver's license information, financial information, car insurance information and Social Security number.

53. Plaintiff Rohr provided her Private Information to Defendant and trusted that it would use reasonable measures to protect it according to state and federal law.

54. Defendant deprived Plaintiff Rohr of the earliest opportunity to guard herself against the Data Breach's effects by failing to notify her of the Breach.

55. As a result of its inadequate cybersecurity, Defendant exposed Plaintiff Rohr's Private Information for theft by cybercriminals and fraudsters and sale on the dark web.

56. Plaintiff Rohr spent time dealing with the consequences of the Data Breach, which includes time spent gathering information about the Data Breach, self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred, and dealing with spam. This time has been lost forever and cannot be recaptured.

57. Following the Data Breach, Plaintiff Rohr has experienced a large influx of spam and scam calls and text messages. This further demonstrates that Plaintiff's

information was stolen in the Data Breach has been placed in the hands of cybercriminals.

58. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[11] On information and belief, the spam calls and messages Plaintiff Reames-Clevenger is experiencing are a result of the Data Breach.

59. Plaintiff Rohr has and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff fears for her personal financial security and uncertainty over what Private Information was exposed in the Data Breach.

60. Plaintiff Rohr has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

61. Plaintiff Rohr has suffered additional actual injury in the form of damages to and diminution in the value of their Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

62. Plaintiff Rohr suffered actual injury from the exposure of her Private Information —which violates her rights to privacy.

63. Plaintiff Rohr has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties and possibly criminals.

---

[11] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited February 4, 2026).

64. Plaintiff Rohr has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft***

65. Plaintiffs and members of the proposed Class have suffered injury from the misuse of their Private Information that can be directly traced to Defendant.

66. As a result of Defendant's failure to prevent the Data Breach, Plaintiffs and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their Private Information is used;
b. The diminution in value of their Private Information;
c. The compromise and continuing publication of their Private Information;
d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;
e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;
f. Delay in receipt of tax refund monies;
g. Unauthorized use of stolen Private Information; and
h. The continued risk to their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fail to undertake the appropriate measures to protect the Private Information in their possession.

67. Stolen Private Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

68. The value of Plaintiffs' and the Class's Private Information on the black market is considerable. Stolen Private Information trades on the black market for years, and criminals frequently post stolen Private Information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

69. It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

70. One such example of criminals using Private Information for profit is the development of "Fullz" packages.

71. Cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

72. The development of "Fullz" packages means that stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiffs and the proposed Class' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a

jury, to find that Plaintiffs' and the Class's stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

73. Defendant disclosed the Private Information of Plaintiffs and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Private Information of Plaintiffs and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Private Information.

74. Defendant's failure to properly notify Plaintiffs and members of the Class of the Data Breach exacerbated Plaintiffs' and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Private Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

75. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Private Information.

76. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the sensitive consumer information that it keeps;
b. properly dispose of Private Information that is no longer needed;
c. encrypt information stored on computer networks;
d. understand their network's vulnerabilities; and
e. implement policies to correct security problems.

77. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

78. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

79. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

80. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Fail to Comply with Industry Standards***

81. As noted above, experts studying cyber security routinely identify entities in possession of PII and PHI as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

82. Several best practices have been identified that a minimum should be implemented by employers in possession of PII and PHI, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can

access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

83. Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

84. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

85. Upon information and belief, Defendant failed to comply with at least one––or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## CLASS ACTION ALLEGATIONS

86. Plaintiffs are suing on behalf of themselves and the proposed Class ("Class"), defined as follows:

> All United States citizens whose Private Information was compromised in the Data Breach discovered by Defendant in February 2026, including all those who received notice of the Breach.

87. Excluded from the Class is Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant have a controlling interest, any of Defendant's

officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

88. Plaintiffs reserve the right to amend the class definition.

89. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

a. **Numerosity**. Plaintiffs are representative of the Class, consisting of several thousands of members, far too many to join in a single action;

b. **Ascertainability**. Members of the Class are readily identifiable from information in Defendant's possession, custody, and control;

c. **Typicality**. Plaintiffs' claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

d. **Adequacy**. Plaintiffs will fairly and adequately protect the proposed Class's interests. Their interests do not conflict with the Class's interests, and they have retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e. **Commonality**. Plaintiffs' and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

i. Whether Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's Private Information;

ii. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

iii. Whether Defendant were negligent in maintaining, protecting, and securing Private Information;

iv. Whether Defendant breached contract promises to safeguard Plaintiffs' and the Class's Private Information;

v. Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

vi. Whether the Breach Notice was reasonable;

vii. Whether the Data Breach caused Plaintiffs' and the Class's injuries;

viii. What the proper damages measure is; and

ix. Whether Plaintiffs and the Class are entitled to damages, treble damages, or injunctive relief.

90. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiffs and the Class)**

91. Plaintiffs reallege paragraphs 1-90 as if fully set forth below.

92. Plaintiffs and members of the Class entrusted their Private Information to Defendant. Defendant owed to Plaintiffs and the Class a duty to exercise reasonable care in handling and using the Private Information in their care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

93. Defendant owed a duty of care to Plaintiffs and members of the Class because it was foreseeable that Defendant failure to adequately safeguard their Private Information in accordance with state-of-the-art industry standards concerning data

security would result in the compromise of that Private Information —just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and the Class's Private Information by disclosing and providing access to this information to unauthorized third parties and by failing to properly supervise both the way the Private Information was stored, used, and exchanged, and those in their employ who were responsible for making that happen.

94. Defendant owed to Plaintiffs and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their Private Information. Defendant also owed a duty to timely and accurately disclose to Plaintiffs and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiffs and the Class to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

95. Defendant owed these duties to Plaintiffs and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiffs' and the Class's Private Information.

96. The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendant hold vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Private Information —whether by malware or otherwise.

97. Private Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiffs and the Class and the importance of exercising reasonable care in handling it.

98. Defendant breached their duties by failing to exercise reasonable care in supervising their employees, agents, contractors, vendors, and suppliers, and in handling and securing the Private Information of Plaintiffs and the Class which actually and proximately caused the Data Breach and Plaintiffs' and the Class's injury. Defendant further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiffs' and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

99. Defendant's breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiffs and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost benefit of their bargain, lost value of their Private Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**COUNT II**

**Negligence *Per Se***

**(On Behalf of Plaintiffs and the Class)**

100. Plaintiffs reallege paragraphs 1-90 as if fully set forth below.

101. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and the Class's Private Information.

102. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, Private Information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiffs' and the members of the Class's Private Information.

103. Defendant breached its duties to Plaintiffs and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information.

104. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant are bound by industry standards to protect confidential Private Information.

105. Defendant violated its under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiffs' and the Class's Private Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

106. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

107. But for Defendant's wrongful and negligent breach of the duties owed to Plaintiffs and members of the Class, Plaintiffs and members of the Class would not have been injured.

108. The injury and harm suffered by Plaintiffs and members of the Class were the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that they were failing to meet their duties and that their breach would cause Plaintiffs and members of the Class to suffer the foreseeable harms associated with the exposure of their Private Information.

109. Had Plaintiffs and the Class known that Defendant did not adequately protect their Private Information, Plaintiffs and members of the Class would not have entrusted Defendant with their Private Information.

110. Defendant's various violations and their failure to comply with applicable laws and regulations constitutes negligence *per se*.

111. As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of Private Information; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen Private Information, entitling them to damages in an amount to be proven at trial.

112. Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and Class members have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect their Private Information in their continued possession.

**COUNT III**
**Breach of Implied Contract**
**(On Behalf of Plaintiffs and the Class)**

113. Plaintiffs reallege paragraphs 1-90 as if fully set forth below.

114. Plaintiffs and Class members either directly contracted with Defendant or Plaintiffs and Class members were the third-party beneficiaries of contracts with Defendant.

115. Plaintiffs and Class members were required to provide their Private Information to Defendant as a condition of receiving services provided by Defendant. Plaintiffs and Class members provided their Private Information to Defendant in exchange for Defendant's services.

116. Plaintiffs and Class members reasonably understood that a portion of the funds they paid Defendant would be used to pay for adequate cybersecurity measures.

117. Plaintiffs and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the Private Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

118. Plaintiffs and the Class members accepted Defendant's offers by disclosing their Private Information to Defendant in exchange for services.

119. In turn, and through internal policies, Defendant agreed to protect and not disclose the Private Information to unauthorized persons.

120. In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiffs' and Class Member's Private Information.

121. Implicit in the parties' agreement was that Defendant would provide Plaintiffs and Class members with prompt and adequate notice of all unauthorized access and/or theft of their Private Information.

122. After all, Plaintiffs and Class members would not have entrusted their Private Information to Defendant in the absence of such an agreement with Defendant.

123. Plaintiffs and the Class fully performed their obligations under the implied contracts with Defendant.

124. The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

125. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

126. Defendant materially breached the contracts it entered with Plaintiffs and Class members by:

a. failing to safeguard their information;

b. failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c. failing to comply with industry standards;

d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

e. failing to ensure the confidentiality and integrity of the electronic Private Information that Defendant created, received, maintained, and transmitted.

127. In these and other ways, Defendant violated its duty of good faith and fair dealing.

128. Defendant's material breaches were the direct and proximate cause of Plaintiffs' and Class members' injuries (as detailed *supra*).

129. And, on information and belief, Plaintiffs' Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

130. Plaintiffs and Class members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

131. Plaintiffs reallege paragraphs 1-90 as if fully set forth below.

132. This claim is pleaded in the alternative to the breach of implied contractual duty claim.

133. Plaintiffs and members of the Class conferred a benefit upon Defendant in providing Private Information to Defendant.

134. Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiffs and the Class. Defendant also benefited from the receipt of Plaintiffs' and the Class's Private Information, as this was used to facilitate the treatment, services, and goods they sold to Plaintiffs and the Class.

135. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiffs' and the Class's Private Information because Defendant failed to adequately protect their Private Information. Plaintiffs and the proposed Class would not have provided their Private Information to Defendant had they known Defendant would not adequately protect their Private Information.

136. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and members of the Class all unlawful or inequitable proceeds received by them because of its misconduct and Data Breach.

**COUNT V**
**Invasion of Privacy**
**(On Behalf of Plaintiffs and the Class)**

137. Plaintiffs reallege paragraphs 1-90 as if fully set forth below.

138. Plaintiffs and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

139. Defendant owed a duty, including Plaintiffs and the Class, to keep this information confidential.

140. The unauthorized acquisition (i.e., theft) by a third party of Plaintiffs and Class Members' Private Information is highly offensive to a reasonable person.

141. The intrusion was into a place or thing which was private and entitled to be private. Plaintiffs and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiffs and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

142. The Data Breach constitutes an intentional interference with Plaintiffs' and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

143. Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

144. Defendant acted with a knowing state of mind when it failed to notify Plaintiffs and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

145. Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiffs and the Class.

146. As a proximate result of Defendant's acts and omissions, the Private Information of Plaintiffs and the Class were made available for disclosure and redisclosure without authorization, causing Plaintiffs and the Class to suffer damages (as detailed *supra*).

147. And, on information and belief, Plaintiffs' Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

148. Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Class since their Private Information are still maintained by Defendant with their inadequate cybersecurity system and policies.

149. Plaintiffs and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Private Information of Plaintiffs and the Class.

150. In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class Members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

## PRAYER FOR RELIEF

Plaintiffs and the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiffs and the proposed Class, appointing Plaintiffs as class representatives, and appointing their counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiffs and the Class;

D. Enjoining Defendant from further deceptive practices and making untrue statements Plaintiffs the Data Breach and the stolen Private Information;

E. Awarding Plaintiffs and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiffs and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiffs and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiffs hereby demand that this matter be tried before a jury.

Dated: February 5, 2026

By: /s/ *Andrew J. Shamis*
Andrew J. Shamis (Bar #101754)
Tonyia J. Johnson (Bar #1058251)
**SHAMIS & GENTILE P.A.**
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Tel: (305) 479-2299
Email: ashamis@shamisgentile.com
Email: tjohnson@shamisgentile.com

Carly M. Roman (*Pro Hac Vice forthcoming*)
Raina C. Borrelli (*Pro Hac Vice forthcoming*)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com
raina@straussborrelli.com

*Attorneys for Plaintiffs and the Class*